IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EAZS A. HARPER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANTHONY WILLS, ZACHARY HART, QUINTON BENT, MORGAN GIACOMO, JOHN ANDREW HUSTON, DAVID GARCIA, LANCE KORANDO, DALTYN KORANDO, DALTON KITCHEN, KYLAN KNIGHT, KEYAN HAGENE, GARRETT LEPOSKY, JOHN DOE #1 CORRECTIONAL OFFICER, JOHN DOE #2 CORRECTIONAL OFFICER, C/O SMITH, K. MODGLIN, C/O EVANS, NURSE ANNA, NURSE CINDY, KAREN HEPP, and COUNSELOR YOUNG,**<br><br>**Defendants.** | **Case No. 26-cv-866-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Eazs A. Harper, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On April 3, 2024, Harper transferred to Menard where he and two other inmates arriving at the prison were met by Correctional Officers Quinton Bent, Zachary Hart, Lance Korando, Daltyn Korando, John Andrew Huston, Keyan Hagene, Dalton Kitchen, David Garcia, Kylan Knight, K. Modglin, C/O Smith, C/O Evans, Garrett Leposky, and Morgan Giacomo (Doc. 1, p. 22). The inmates were placed in a caged area where they waited to be strip searched and receive a medical examination (*Id*.). While waiting for his medical examination with Nurse Morgan Giacomo, he overheard the other officers playing cards (*Id*.). The officers asked him if he was the same individual who filed a lawsuit against one of the officer's cousins (*Id*.).

Bent and Hart approached and asked Harper if he remembered Hart when he worked at Lawrence and whether he filed a lawsuit against one of the officers (Doc. 1, p. 22). Harper did not reply. Officers Bent, Hart, Lance Korando, Daltyn Korando, Dalton Kitchen, David Garcia, Kylan Knight, and K. Modglin stood at the door as Harper was told to strip naked of his clothes and then was handcuffed behind his back and to the back of the cage gate (*Id*. at p. 23). Bent and Hart continued to question Harper as to his prior lawsuits. Bent and Hart both sprayed Harper in the face with mace and then the other officers attacked Harper, beating and kicking him (*Id*. at pp. 23-26). They continued to spray him with mace despite Harper's protests that he suffered from asthma and bronchitis (*Id*. at p. 23). Officers Smith, Evans, Leposky, Huston, Hagene, and Nurse Morgan Giacoma stood by and watched the assault but failed to intervene (*Id*. at p. 24). Harper suffered a broken tooth, busted nose, and injuries to his lip, face, and body (*Id*. at p. 24). They continued to spray Harper with mace, despite Nurse Giacoma knowing that he suffered from asthma (*Id*. at p. 25). Harper notes that

he passed out on several occasions. The officers eventually forced him up and into a jump suit (*Id*. at p. 26). He begged for medical treatment from the officers and those standing around, including Nurse Giacoma, but they all refused his requests for help (*Id*.).

Bent and Hart walked Harper down the gallery stairs to the segregation unit. Harper could not stand on his own and the officers pushed him forward (Doc. 1, p. 27) The two officers continued to beat him and eventually pushed him down the steps causing him to sustain additional injuries including a broken finger (*Id*.). They placed him in a cell and confiscated the mattress and bedding (*Id*. at p. 28). Harper notes that he also lacked towels, soap, and additional clothing. Before removing the cuffs, they placed his hands through the food slot and slammed the food slot door on Harper's wrists numerous times, causing a deep cut in his right wrist (*Id*.). They removed the cuffs and left him alone in the cell with the water off (*Id*. at pp. 28-29). Harper was unable to wash his face and body of the mace and resorted to placing his head in the toilet which was covered in urine and feces (*Id*.). Harper eventually passed out but was denied medical care for his injuries (*Id*. at p. 29).

After regaining consciousness, he requested medical treatment from all the officers working that night, but his requests were denied. He was also denied access to a shower. In the following days, he continued to ask for care from all of the officers and Nurse Giacomo (*Id*. at pp. 29-30). He alleges that Nurse Giacomo allowed Bent and Hart to confiscate his inhalers and pump out all the medication in front of him (*Id*. at p. 30).

Harper alleges that he remained in the cell for months and was denied showers, medical care, food trays, and running water (Doc. 1, p. 31). On numerous occasions he spoke to Nurse Giacoma, Nurse Karen Hepp, Nurse Anna, and Nurse Cindy about his need for care due to his injuries (*Id*.). The nurses told Harper that the officers who assaulted him would

not allow them to treat him (*Id.*). He also submitted numerous sick call requests and handed the requests directly to the four nurses when they handed out medications, but they would not provide him with care (*Id.*). They would either refuse the sick call requests or hand the requests to officers who would throw them in the trash (*Id.* at pp. 31-32). He submitted requests to the on-duty nurses on April 8 through 16 and April 30 (*Id.* at p. 32). Bent informed Harper that Nurse Giacoma was his girlfriend and she would continue to trash his request slips to prohibit Harper from obtaining medical care for his injuries (*Id.*). The officers and nurses continued to deny him medical care, showers, food trays, mail, visitations, grievances, and medication through January 2025 (*Id.* at pp. 32-33).

While housed in segregation, any time Bent worked the gallery he would cut off the water to Harper's cell (Doc. 1, pp. 32-33). He would refuse food trays. Other officers denied him access to food trays as well, often sitting them in front of his cell where he could not reach them and then throwing them away at the end of the mealtime (*Id.* at p. 33). Harper alleges that this happened on numerous occasions between April 2024 and January 2025 (*Id.*). He has also faced additional assaults from the officers, has been sprayed with mace on several occasions, and denied mediations and meals (*Id.*).

Harper alleges that Bent and two unknown officers (identified as John Doe #1 and John Doe #2) pulled him out of his cell on November 12, 2024, and threatened him, directing him to drop his lawsuits (Doc. 1, p. 34). Bent punched Harper in the face and threw him up against the wall (*Id.*). John Doe #2 told Bent that Warden Anthony Wills did not like him (*Id.*). The officers threatened to kill Harper if he refused to drop his lawsuit (*Id.*). John Doe #2 then hit Harper in the head with the flashlight and stuck it down his throat (*Id.*). He was beaten, kicked, and choked (*Id.*). They denied him medical care after the incident (*Id.*). On November

16, 2024, Hart threatened to kill him and denied him his food tray. He turned the water off in Harper's cell and sprayed him with mace (*Id.*). On December 22, 2024, Kitchen, Modglin, D. Korando, and Smith sprayed mace in his cell through the food slot and snatched his bedding (*Id.* at p. 35). On numerous dates in December, Harper alleges that Bent, Smith, Kitchen, Modglin, D. Korando, Evans, K. Hepp, Nurse Anna, and Nurse Cindy denied him medical care (*Id.*).

Harper alleges that he tried to submit grievances after the April assault, but Bent controlled the grievance box in the unit because he is the five-day officer in the unit (Doc. 1, p. 36). He had his cellmate submit a grievance on a day that Bent was not working the unit, but that grievance also went missing (*Id.*). He submitted multiple grievances but never received a reply (*Id.*). Harper alleges that Anthony Wills received one grievance marked April 4, 2024, but Harper never received a receipt for the grievance. He alleges Wills denied Harper his right to appeal his grievances (*Id.* at p. 37). He believes this was an act of retaliation (*Id.* at p. 38). Harper also maintains that he submitted medical requests through Wills's office, but he was denied medical treatment (*Id.*).

**Preliminary Dismissals**

In addition to the assault in April 2024, Harper alleges that he faced a number of constitutional violations from April 2024 through January 2025. These include multiple incidents where he was denied mail, showers, certain visitations, food trays, grievances and medical care. He also alleges that he was maced on a number of occasions. None of these incidents are described with any specificity indicating which defendants participated in the violations, the specific dates that they occurred, or how his rights were specifically violated. In some instances, he has identified dates but then lists numerous defendants who were

allegedly involved. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). The allegations are simply too vague to state viable claims.

Harper also alleges that Warden Anthony Wills is liable for the April assault because he failed to respond to grievances about the assault or interfered in the grievance process in some way. Harper alleges that he was both unable to submit grievances and that his grievances were submitted but he never received a response. In any event, Wills cannot be liable simply for failing to respond to a grievance. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Burks*, 555 F.3d at 595 (there is no "free-floating obligation to put things to rights"). Harper also alleges that Wills sought to retaliate against him, but his allegations are merely conclusory. He also alleges that Wills denied him medical care because he sent requests to Wills's office, but there are no allegations to suggest that Wills received those requests or was aware of his need for medical care. Harper has also identified Counselor Young as a defendant, but he has not alleged how he interfered with the grievance process and thus any claim regarding the handling of his grievances by Young also fails to state a claim. Thus, Wills and Counselor Young are **DISMISSED without prejudice**.

<u>**Discussion**</u>

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment excessive force claim against Bent, Hart, L. Korando, D. Korando, Kitchen, Garcia, Knight, and Modglin for their use of force against Harper on April 3, 2024.**

**Count 2:** **Eighth Amendment failure to intervene claim against C/O Smith, Evans, Leposky, Huston, Hagene, and Morgan Giacomo for failing to stop the use of force on April 3, 2024.**

**Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against Bent, Hart, L. Korando, D. Korando, Kitchen, Garcia, Knight, Modglin, Smith, Evans, Leposky, Huston, Hagene, and Morgan Giacomo for failing to obtain medical care for Harper's injuries after the assault.**

**Count 4:** **Eighth Amendment conditions of confinement claim against Hart and Bent for placing Harper in a cell without water, sanitary items, and bedding directly after the assault.**

**Count 5:** **Eighth Amendment excessive force claim against Bent, John Doe #1, and John Doe #2 for their use of force against Harper on November 12, 2024.**

**Count 6:** **Eighth Amendment deliberate indifference to medical needs claim against Morgan Giacomo, Nurse Karen Hepp, Nurse Anna, and Nurse Cindy for failing to provide Harper with medical care after the April assault.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

**Counts 1 and 2**

At this stage, Harper states a viable excessive force claim against Bent, Hart, L. Korando, D. Korando, Kitchen, Garcia, Knight, and Modglin in Count 1. He alleges that the officers attacked him for no other reason than because he filed a lawsuit against one of their fellow officers. Harper's allegations suggest that force was used "maliciously and sadistically" rather than in "a good-faith effort to maintain or restore discipline." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). He also alleges that the other officers and Nurse

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Giacomo watched the assault but failed to intervene. Thus, Count 2 shall also proceed against C/O Smith, Evans, Leposky, Huston, Hagene, and Morgan Giacomo.

**Counts 3 and 6**

Harper also alleges that he asked both the officers who participated in the assault and those who were merely observers for medical care after the conclusion of the incident. He alleges that no one would provide him with care. He also spoke to several nurses in the days after the assault and submitted sick call slips to those nurses, but they all refused to treat his injuries. Thus, Count 3 and Count 6 shall proceed for the lack of medical care provided to Harper.

**Count 4**

Harper also states a viable conditions of confinement claim against Hart and Bent. He alleges that the two officers walked him to a cell after the assault and turned off the water to the cell. He was denied a mattress, bedding, and other sanitary supplies. Thus, Count 4 shall proceed against Hart and Bent.

**Count 5**

Finally, Harper alleges that he faced another incident of excessive force from Hart and two unknown correctional officers in November 2024. This count also states a claim. To help identify the unknown correctional officers, the Court **ADDS** the current warden of Menard, Matthew Plummer, to the case (in his official capacity only) to respond to discovery aimed at identifying the two officers.

## Disposition

For the reasons stated above, Count 1 shall proceed against Quinton Bent, Zackary Hart, Lance Korando, Daltyn Korando, Dalton Kitchen, David Garcia, Kylon Knight, and K.

Modglin. Count 2 shall proceed against C/O Smith, C/O Evans, Garrett Leposky, John Andrew Huston, Keyan Hagene, and Morgan Giacomo. Count 3 shall proceed against Quinton Bent, Zackary Hart, Lance Korando, Daltyn Korando, Dalton Kitchen, David Garcia, Kylon Knight, K. Modglin, C/O Smith, C/O Evans, Garrett Leposky, John Andrew Huston, Keyan Hagene, and Morgan Giacomo. Count 4 shall proceed against Zachary Hart and Quinton Bent. Count 5 shall proceed against Quinton Bent, John Doe #1, and John Doe #2. Count 5 shall proceed against Morgan Giacomo, Nurse Anna, Nurse Cindy, and Karen Hepp. All other claims and defendants are **DISMISSED without prejudice**. Matthew Plummer is **ADDED** to the case in his official capacity to identify the John Doe Officers.

The Clerk of Court shall prepare for Quinton Bent, Zackary Hart, Lance Korando, Daltyn Korando, Dalton Kitchen, David Garcia, Kylon Knight, K. Modglin, C/O Smith, C/O Evans, Garrett Leposky, John Andrew Huston, Keyan Hagene, Morgan Giacomo, Nurse Anna, Nurse Cindy, Karen Hepp, and Matthew Plummer (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Harper. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Harper, the employer shall furnish the Clerk with the defendant's current work address, or, if not known,

defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Harper's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Harper, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Harper is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 27, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**